# EXHIBIT A

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiffs

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

5/5/2026 5:17:22 PM

Clerk of the Superior Court
By A. Vargas          ,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| JUDITH PETTIFORD, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>GERBER LIFE INSURANCE COMPANY, a New York corporation, d/b/a GERBERLIFE.COM,<br><br>    Defendant. | Case No. 26CU011597C<br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR UNLAWFUL SPAMMING AND INVASION OF PRIVACY** |

FIRST AMENDED CLASS ACTION COMPLAINT

# I.    NATURE OF ACTION

1.    Defendant GERBER LIFE INSURANCE COMPANY ("GERBER LIFE") blankets Americans with illegal spam.  It deploys every tactic in the proverbial playbook — false and misleading subject lines, spoofed domains, and falsified headers — to trick unwary recipients into opening messages they would otherwise ignore.  In short, Defendant is the definition of a company that profits from everything that people *hate* about spam.

2.    The harm does not stop at the inbox.  After being deceived into engaging with the spam, spam recipients like Plaintiff are funneled to Defendant's website at GERBERLIFE.COM, where Defendant installs a web of illegal tracking pixels on their devices.  Those tracking technologies enable Defendant and its surveillance partners to monitor visitors' behavior across the internet, converting a single deceptive email into ongoing digital surveillance.

3.    There is something truly evil about a scheme that uses a deceptive spam email not just to trick a recipient into clicking, but to surreptitiously turn that click into a gateway for ongoing surveillance.  The initial fraud destroys any semblance of informed consent at the outset. That alone is actionable. But it is the second step that makes the conduct especially pernicious: once the user is lured onto the website under false pretenses, tracking pixels and similar technologies are silently deployed to harvest data, monitor behavior, and follow the user across the internet without their knowledge or permission.  This is a calculated bait-and-switch that converts deception into durable exploitation, transforming a one-time click into a persistent invasion of privacy.  By coupling fraud with covert tracking, the actor is not just misleading the consumer, but conscripting them into an ongoing data-extraction scheme, all while hiding behind layers of obfuscation.  That combination — intentional deception followed by invisible surveillance — is what makes the practice not just unlawful, but truly insidious.

4.    Both the spam and the surveillance are illegal under California law.[1]

---

[1]    *See Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 829-30 (Cal. Ct. App. 2d Dist. 2011) (Section 17529.5 "impos[es] strict liability on advertisers who benefit from (and are the ultimate cause of) deceptive e-mails"); *Id*. at 822 (Section 17529.5 "does not require the plaintiff to prove that it relied on the deceptive commercial e-mail message or that it incurred damages as a result of the deceptive message"); Id at 821 ("Section 17529.5 … does not include any 'scienter' or intent requirement"); *Id*. at 820 ("[S]ection 17529.5 does not require the plaintiff to show that the defendant actually made a false or deceptive statement…. [B]y its plain terms, the statute is not limited to entities that actually send or

Continued on the next page

FIRST AMENDED CLASS ACTION COMPLAINT

## II.    PARTIES, JURISDICTION AND VENUE

5.    Plaintiff is and was at all times mentioned herein the owner of a California e-mail address. Earlier this year, she received a misleading spam e-mail from Defendant, was tricked into opening the spam, and then visited Defendant's website at GERBERLIFE.COM while in California.

6.    Defendant GERBER LIFE is a New York company with its principal place of business in New York.  It operates the website GERBERLIFE.COM through which it markets life insurance to California consumers.  Indeed, it is believed that Defendant has over 10,000 active clients in California.

7.    As a court of general jurisdiction, this Court has jurisdiction over all matters presented. Likewise, (i) there are 100 or more class members including citizens of all fifty states who own or operate a "California e-mail address" as defined by statute; and (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs – indeed, the total amount in controversy is believed to exceed $50,000,000.

8.    Venue is proper in this County because a substantial part of the events and omissions giving rise to the class claims occurred in this County, because Defendant conducts business in this County, and because Defendant is not a citizen of California.

## III.    FACTUAL ALLEGATIONS

9.    Plaintiff is a California citizen and is the owner of the e-mail address **ljpettiford95@yahoo.com.**  Defendant spams plaintiff and other class members relentlessly.  As just one example, earlier this year plaintiff received a spam e-mail from Defendant with a forged header, spoofed domain, and deceptive subject line.  That spam is attached hereto as **Exhibit "A".**

10.    Defendant spammed Plaintiff from the address **"d1s74gcz@l6e.brightiva9.com."** Confused, and wondering why she was receiving an e-mail from a toothpaste company that sells advanced whitening toothpaste about a life insurance bill,[2] she clicked on the e-mail.

---

initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails."; and *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023), aff'd, 2024 WL 123456 (9th Cir. 2024) (holding that the California Invasion of Privacy Act applies to internet conduct).

[2]  *See* Brightiva™ Niacinamide Whitening Toothpaste, *Lustre & Glow*, https://lustreandglow.shop/products/brightiva-bloom-your-brightest-smile (last visited Apr. 29, 2026) (identifying "Brightiva™" as a toothpaste product marketed for whitening and oral health).

FIRST AMENDED CLASS ACTION COMPLAINT

11.    As part of the investigation, Plaintiff was induced to click on a link in the e-mail and visit Defendant's website at https://www.gerberlife.com/child-life-insurance/grow-up-plan?utm_campaign=Flex+Marketing&utm_source=Winterbridge%3AFlex+Marketing&utm_medium=Affiliate&gacv1=vvz4t2gblsr5moln3ozsoj7ix7lir522g5dj&gacv2=411612&gacv3=&gacv6=growup_product&gacv8=FUNP&gacv9=growup_14&gacv10=L6&keycode=411612&sub_id=1108276802&tid=7560b606c5154edeaa2a4f850acbd324.    But for the deceptive falsified and misleading header information, spoofed domain, and misleading subject line, Plaintiff would not have opened the message or visited Defendant's website.    In this way, the spam directly caused Plaintiff's interaction with Defendant's site, which was the intended result of the deceptive campaign.

12.    The email's metadata and embedded code reflect multiple indicia of spam evasion and deceptive marketing practices.  The message was transmitted through a third-party bulk mailing service and routed with a sending IP that failed authentication checks, including DKIM failure and DMARC rejection, indicating spoofing.  The email further employs layered tracking and obfuscation techniques, masking the true destination of hyperlinks and enabling user tracking.  The body of the spam contains multiple invisible tracking pixels (1x1 images) designed to monitor recipient engagement without consent.  Additionally, the sender uses a mismatched "From" and "Reply-To" configuration and routes messages through intermediary domains to obscure the true sender identity.  Collectively, these technical characteristics demonstrate deliberate efforts to evade spam detection, conceal the sender's identity, and surreptitiously track recipients.

13.    The preceding is just a single example of the spam that Defendant sends to class members.  Based on publicly available sources, it is believed that GERBER LIFE is responsible for over 100,000 spam e-mails to individuals in all 50 states who own California e-mail addresses each year.

14.    The spam identified above is an "Unsolicited Commercial e-mail advertisement" because plaintiff had no pre-existing relationship with Defendant and because the e-mail was initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit.  *See* Bus. & Prof. Code § 17529.1(c).  Likewise, Plaintiff has never given "direct consent" to receive commercial e-mail advertisements from Defendant or its marketing agents.

FIRST AMENDED CLASS ACTION COMPLAINT

15.    The above spam violates Bus. & Prof. Code § 17529.5(a)(1) because it uses the domain **brightiva.com** without permission and because that domain is not readily traceable to Defendant.  As shown above, the deceptive and falsified domain tricked plaintiff into engaging with the e-mail and visiting Defendant's website to investigate it.

16.    The spam violates Bus. & Prof. Code § 17529.5(a)(2) because the header information is falsified and deceptive, including the use of a "from" name, return address, and domain that does not accurately identify the party who initiated the email.  As shown above, the deceptive header information tricked Plaintiff into engaging with the e-mail and visiting Defendant's website to investigate it.  Likewise, nothing in the header permits a recipient — or a reasonable investigator using publicly available tools such as WHOIS — to determine who actually sent or authorized the email.

17.    The spam violates Bus. and Prof. Code § 17529.5(a)(3) because the subject line **"Child whole life insurance notice"** mimics a legitimate billing or account-related communication rather than an advertisement, thereby inducing a reasonable recipient like plaintiff to open the email under false pretenses.  The use of the word "notice" conveys urgency and formality, suggesting that the email relates to an existing policy, payment obligation, or important account update — particularly in the context of "child whole life insurance," which reasonably implies a policy already in place.  Plaintiff interpreted this as a bill, renewal notice, or required action regarding coverage for a child, not as a generalized marketing solicitation.  That impression is false, as the email is merely an advertisement designed to generate leads.  The deception is compounded by the absence of any indication that the message is promotional, the lack of disclosure that the recipient has not actually applied for or been issued a policy, and the use of atypical character substitutions ("life," "insurance") that are commonly employed to evade spam filters while preserving the appearance of legitimate communication.  By falsely implying an existing relationship, a pending obligation, and the need for immediate attention, the subject line misleads consumers into engaging with what is in reality unsolicited marketing.

18.    Although a plaintiff need not plead or prove actual damages to bring a claim under the statute, Plaintiff has in fact suffered concrete, particularized harm as a result of Defendant's conduct.  Plaintiff spent valuable time and attention investigating the misleading offer; searching the WHOIS database to learn who the e-mail came from; incurred opportunity costs and lost productivity; and

- 5 -

suffered depletion of device and network resources, including storage space, bandwidth usage on a metered data plan, and battery life.

19.     The unauthorized domain name, misleading headers and subject lines also invaded Plaintiff's privacy and disrupted the ordinary use and enjoyment of Plaintiff's email account, diminishing its value as a communication tool and necessitating additional filtering and security precautions. These injuries were directly caused by Defendant's unlawful email and are redressable by statutory and injunctive relief.

20.     Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements.  In fact, Defendant actively defies California law, as shown by the fact that Defendant continues to spam California residents despite being notified of its illegal conduct.

21.     Going from bad to worse, after luring Plaintiff to its website at GERBERLIFE.COM, Defendant illegally installed numerous tracking pixels ("Tracking Pixels") on Plaintiff's device that allow various *de facto* data brokers **(including Brightedge, SalesForce, Boomtrain, and Optimizely)** to (1) intercept communications from Plaintiff and track Plaintiff across the internet and (2) use those communications to compile and sell deeply personal details about Plaintiff to the highest bidders. Defendant does this to *everyone* who it lures to its site.

22.     In short, Defendant has installed the Tracking Pixels to track signals generated by internet users (thus operating as a "Trap and Trace" device) to compile the dossiers described above and sell the information to the highest bidders.  By doing so, Defendant has violated California Penal Code § 638.51.

23.     The Tracking Pixels use algorithms to analyze internet and device data and predict whether two or more devices are owned by the same person.  Participating websites and apps then cater their advertisements based on a collective knowledge of the user's actions across all of their devices. The Tracking Pixels use data such as cookie IDs, operating system IDs, IP addresses, online registrations, and data from partnering publishers to develop a probability that different devices are shared by the same person.

24.     The Tracking Pixels are used for advertising to consumers across devices, where a user is shown an ad on their mobile or tablet device based on websites they visited on a desktop.  For example,

- 6 -

if an Android phone visits a website shortly after a desktop PC from the same home network, the Tracking Pixels will assess that there is a high probability that the two devices are operated by the same person and will show them similar ads on both devices. The Tracking Pixels also use cross-device analytics for things like location, timing, user behavior, and audience analysis.

25. The Tracking Pixels spyware activities described above are known as "fingerprinting." Put simply, the Tracking Pixels collect as much data as it can about otherwise anonymous visitors to Defendant's website and matches it with existing information that the Tracking Pixels have acquired and accumulated about hundreds of millions of Americans.

26. According to the esteemed Brennan Center for Justice, data brokers are "the main purveyors of surveillance capitalism" that "collect, assemble, and analyze personal information to create detailed profiles of individuals, which they then sell to "financial institutions and insurance firms…Advertising companies… predatory loan companies, stalkers, and scammers…foreign actors…and law enforcement and other government agencies including the FBI and the IRS."). *See* https://www.brennancenter.org/our-work/research-reports/closing-data-broker-loophole (last accessed April 2026).

27. After receiving the deceptive spam, Plaintiff visited the Website to investigate and was unaware of the secret spyware that was installed on plaintiff's device and that Defendant and its surveillance partners used to surveil visitors and monetize their personal information.

28. The Tracking Pixels (1) begin to collect information the moment a user lands on the website before any pop-up or cookie banner advises users of the invasion or seeks their consent; and (2) request and transmit other identifying personal information to link a user's behavior on Defendant's website to the visitor's social media accounts and other devices.

### IV.    CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action on behalf of all persons similarly situated and seek certification of the following class:

**All U.S. Citizens of any U.S. state who:**

**(1)    received any commercial e-mail promoting any of Defendant's products at a California e-mail address where such email(s) contained: (1) a falsified,**

misrepresented, or forged domain name; (2) falsified, misrepresented, or forged header information; or (3) false or misleading subject line or contents; or

(2)    visited GERBERLIFE.COM via a web browser or mobile device, and whose interactions, communications, or personally identifiable information were intercepted, collected, or transmitted to any data brokers through the use of tracking pixels, cookies, or similar technologies, without their knowledge or consent.

30.    The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel.  Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

31.    **Numerosity.**  The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but Plaintiff is informed and believes, and thereon, alleges that there are at least 100,000 members of the Class.

32.    **Typicality.**  Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct described herein.

33.    **Adequacy of Representation.**  Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.  Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and intend to prosecute this action vigorously.

34.    **Predominance of Common Questions of Law or Fact.**  Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members

FIRST AMENDED CLASS ACTION COMPLAINT

of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

    a.   Whether Defendant sent unsolicited commercial e-mail to Class members;

    b.   Whether Defendant secretly tracked visitors to its website by installing pixels from data brokers.

35.    **Superiority.**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.

36.    **Ascertainability**.  Defendant keeps computerized records of its sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendant has one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses.

## V.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of Cal. Business & Professions Code § 17529.5

37.    Plaintiff received the above unsolicited commercial e-mail at a California e-mail address within one year prior to filing the Complaint at a California e-mail address.

38.    As shown above, the spam violated one or more provisions of Section 17529.5.

39.    Defendant is strictly liable for violation of Section 17529.5 for sending spam and is liable in the amount of $1,000 per spam per class member.

40.    Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5 that would justify a reduction in liquidated damages.

41.    Plaintiff and every Class member who received any violative e-mail are entitled to $1,000 in liquidated damages per e-mail from Defendant (Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii)), and to recover reasonable attorney's fees and costs (Cal. Bus. & Prof. Code § 17529.5(b)(1)(C)).

### SECOND CAUSE OF ACTION

**Violations of the California Trap and Trace Law**

**Cal. Penal Code § 638.51**

42.    California's Trap and Trace Law is part of the California Invasion of Privacy Act ("CIPA") codified at Cal. Penal Code 630, et. seq.

43.    CIPA was enacted to curb "the invasion of privacy resulting from the continual and increasing use of" certain technologies determined to pose "a serious threat to the free exercise of personal liberties."   CIPA extends civil liability for various means of surveillance using technology, including the installation of a trap and trace device.

44.    A "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."   Cal. Penal Code § 638.50(c).

45.    California Penal Code § 638.51(a) provides that "a person may not install or use…a trap and trace device without first obtaining a court order.…"

46.    Defendant uses multiple trap and trace process on the Website by deploying the Tracking Pixels on its Website because they capture routing, addressing and/or other signaling information of website visitors including Plaintiff.

47.    Defendant did not obtain consent from Plaintiff or class members before using trap and trace technology to identify users of its Website and has violated section 638.51 and did not obtain a court order to do so.

48.    CIPA imposes civil liability and statutory penalties for violations of section 638.51.  Cal. Penal Code § 637.2.

**THIRD CAUSE OF ACTION**

**California Intrusion Upon Seclusion**

49.    Defendant intentionally intruded upon the private affairs, concerns, and seclusion of Plaintiff by improperly accessing Plaintiff's personal information and using it for improper purposes, including by partnering with multiple data brokers to sell Plaintiff's and class members' private information to the highest bidder and them with behavioral advertising.

FIRST AMENDED CLASS ACTION COMPLAINT

50.     Defendant's intrusions upon the private affairs, concerns, and seclusion of Plaintiff and class members has been substantial and would be highly offensive to a reasonable person and constitute an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of website visitors, centuries of common law, state and federal statutes and regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations, and the penalties imposed by the FTC and other regulatory bodies.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a.  For an order certifying that the action be maintained as a class action, that Plaintiff be designated as class representative, and that undersigned counsel be designated as class counsel;

b.  For all available declaratory, legal, and equitable relief including injunctive relief;

c.  For statutory damages;

d.  For punitive damages;

e.  For attorneys' fees and costs as allowed by law; and

f.  For any and all other relief at law or equity that may be appropriate.

Dated:  April 29, 2026                    PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott J. Ferrell
Attorneys for Plaintiff and the Proposed Class

FIRST AMENDED CLASS ACTION COMPLAINT

# EXHIBIT A

**rom:** Gerber Life Partner <d1s74gcz@l6e.brightiva9.com>
**Date:** January 18, 2026 at 1:56:55 AM EST
**To:** ljpettiford95@yahoo.com
**Subject: Child whole life insurance notice**





Your baby is counting on you to help them take their first financial steps. **You can count on Gerber Life Insurance** to help you show them the way.

## THE GERBER LIFE GROW-UP® PLAN

### STEP 1
Apply for the Gerber Life Grow-Up® Plan.

### STEP 2
Choose from $5,000 to $50,000 of whole life insurance protection and lock in a childhood premium rate that's guaranteed to never increase as long as premiums are paid.

### STEP 3
Benefit from coverage that automatically doubles during age 18 **at no extra cost!**

GET A FREE QUOTE

Receive a FREE Activity Pad with your policy!

FIRST AMENDED CLASS ACTION COMPLAINT

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660.

On April 29, 2026, I served the foregoing document described as **FIRST AMENDED CLASS ACTION COMPLAINT FOR UNLAWFUL SPAMMING AND INVASION OF PRIVACY** on the following person(s) in the manner indicated:

**SEE ATTACHED SERVICE LIST**

☐   (BY MAIL)   I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for mailing with the United States Postal Service.  Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.  On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐   (BY OVERNIGHT FEDERAL EXPRESS)  I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for delivery by overnight courier. Correspondence so collected and processed is deposited in a box or other facility regularly maintained by Federal Express that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by Federal Express with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by Federal Express at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐   (BY HAND DELIVERY) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for hand delivery by courier.  I caused such document t be delivered by hand to the addresse(s) designated.

☐   (BY  ELECTRONIC  SERVICE)   My  electronic  service  address  is _____@pacifictrialattorneys.com.   I am electronically serving the document described above and a copy of this declaration to the person, on the date shown below, to the email addresses of the persons listed in the attached service list.

☒   (BY ELECTRONIC SERVICE via USA Legal) I am electronically serving the document described above and a copy of this declaration to the person, on the date shown below, to the email addresses of the persons listed in the attached service list. I am readily familiar with the business' practice for filing electronically, and that the document would be electronically served the same day in the ordinary course of business following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on April 29, 2026, at Newport Beach, California.

_____
Mandy K. Jung

- 13 -
PROOF OF SERVICE

**SERVICE LIST**

Rebecca B. Durrant
KELLEY DRYE & WARREN LLP
888 Prospect Street, Suite 200
La Jolla, CA 92037
Telephone: (212) 808-7551
Facsimile: (213) 547-4901
rdurrant@kelleydrye.com

Attorneys for Defendant
GERBER LIFE INSURANCE COMPANY

14